2020R00132/SFM-ABF/SP

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | : | Hon. Karen M. Williams |
|---|---|---|
| v. | : | Crim. No. 22-787 |
| JOHN MAKOS | : | 18 U.S.C. § 241 |

## INFORMATION

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

**(Conspiracy Against Rights)**

1. At all times relevant to this Information:

    a. Bayside State Prison was a multi-security correctional facility in Leesburg, New Jersey, that housed male inmates serving sentences under New Jersey state law. Bayside State Prison included a medium security facility (the "Prison"). Prison inmates were given work assignments, including in the Prison's kitchen, to facilitate prison operations and to promote the reduction of recidivism. Prison corrections officers were responsible for the well-being of the inmates incarcerated there.

    b. Defendant John Makos was a corrections officer at the Prison.

    c. Inmate 1 was incarcerated at the Prison.

    d. Victim 1, Victim 2, Victim 3, Victim 4, and at least three other inmates (collectively, "the Victim-Inmates") also were incarcerated at the Prison.

2. From at least in or about April 2019 through in or about December

2019, in Cumberland County, in the District of New Jersey, and elsewhere, defendant

**JOHN MAKOS**,

while serving as a corrections officer at the Prison, and acting under color of law, knowingly and willfully combined, conspired, and agreed with others, known and unknown, to injure, oppress, threaten, and intimidate inmates housed at the Prison in the free exercise and enjoyment of a right secured to them by the Constitution and laws of the United States, namely, the right not to be subjected to cruel and unusual punishment.

### Object of the Conspiracy

3.  The object of the conspiracy was to deprive inmates of their right not to be subjected to cruel and unusual punishment.

### Manner and Means

4.  It was part of the conspiracy that Makos and others, including Inmate 1, agreed to assault and punish the Victim-Inmates in a cruel, unusual, arbitrary, and capricious manner, which on occasion resulted in bodily injury to the Victim-Inmates, in part for Makos' own amusement and not for any legitimate law enforcement purpose.

5.  It was further part of the conspiracy that Makos established an ad hoc system of carrying out the assaults against the Victim-Inmates purportedly as punishment for actual, perceived, and fabricated violations of the Prison's rules and customs.

      a.    In doing so, Makos and others engaged in various techniques to assault the Victim-Inmates, including the following:

      i.    The "fence treatment," which consisted of Makos and others causing one arm of the Victim-Inmate to be handcuffed to a fence in the back area of the Prison's kitchen while the other arm was handcuffed to a swinging door, so that the inmate appeared to be "crucified." Inmate 1 or another individual, acting in concert with Makos and others, then moved the swinging door so that the Victim-Inmate's body expanded and collapsed while Makos and others delivered closed-fist strikes to the Victim-Inmate's body.

      ii.    "The motorcycle" which consisted of Makos and others telling a Victim-Inmate to stand with his back against a wall and to then assume a sitting position with his hands extended in front of him as if he were riding a motorcycle and, after the Victim-Inmate complied, Makos and others repeatedly kicking the Victim-Inmate in the Victim-Inmate's exposed chest.

      iii.    "Going away parties," which consisted of Makos and others, in a group, punching and kicking a Victim-Inmate who was scheduled to be released from the Prison.

      b.    The specific assaults carried out by Makos and others in furtherance of the conspiracy included the following:

      i.    Makos and others punched and kicked Victim 1 from the shoulders down on multiple occasions, which resulted in substantial bruising and bodily injury to Victim 1, primarily on parts of Victim 1's body that were not visible when Victim 1 was fully clothed.

      ii.     On at least one occasion, Makos and others subjected Victim 1 to the "fence treatment," resulting in physical pain to Victim 1, bruising to his ribs and other injuries.

      iii.    On at least one occasion, Makos and others subjected Victim 2 to "the motorcycle," which resulted in pain to Victim 2.

      iv.    Makos and others subjected Victim 3 to a "going away party," during which Makos stood by watching, without intervening to stop the conduct, while inmates pinned Victim 3 to the ground and repeatedly kicked and punched Victim 3.

      v.     Makos and others subjected Victim 4 to the "fence treatment," which resulted in physical pain to Victim 4, bruising to Victim 4's arm, hands, leg, and stomach, and marks on Victim 4's wrists from the handcuffs.

6. It was further part of the conspiracy that Makos and others attempted to ensure that the Victim-Inmates and other inmates working in the Prison's kitchen would not report the abuse to prison authorities, by, in part, leading the Victim-Inmates and other inmates to believe that they would lose their relatively desirable jobs in the Prison's kitchen, along with the pay and additional food access that accompanied those jobs, if they reported the abuse.

7. It was further part of the conspiracy that Makos and others, to further conceal their actions, assaulted the Victim-Inmates in areas of the Prison's kitchen that were out of sight of surveillance cameras and caused other inmates to serve as lookouts to alert Makos and others if and when

correctional officers who were unaware of the assaults came near the Prison kitchen.

In violation of Title 18, United States Code, Section 241.

_Philip R. Sellinger/by LMC_
PHILIP R. SELLINGER
United States Attorney